**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOLLY BROWN and JACQUELINE DUSHAJ, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>RIP VAN, INC.,<br><br>Defendant. | Civil Action No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Molly Brown and Jacqueline Dushaj ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Rip Van, Inc. ("Defendant" or "Rip Van"). Plaintiffs' allegations as to Plaintiffs' own actions are based on personal knowledge. The other allegations are based on counsel's investigation, and information and belief.

## NATURE OF THE ACTION

1. This putative class action seeks to hold Defendant Rip Van, Inc. responsible for representations made on the labels of its Rip Van Wafels and Rip Van Mini Wafels (collectively, the "Products").[1]

2. Defendant prominently represents that its Rip Van Wafels products contain "3g sugar" and its Rip Van Mini Wafels products contain "1g sugar" (collectively, the "Representations").

3. Despite these prominent Representations, the Products contain the ingredient vegetable glycerin, which is a sugar alcohol.

[1] Specifically, the Products include Rip Van Wafels in Dutch Caramel & Vanilla, Snickerdoodle, Honey & Oats, Chocolate Brownie, and Cookies & Cream varieties, and Rip Van Mini Wafels in Dutch Caramel & Vanilla and Snickerdoodle varieties.

4. When products make a voluntary label claim regarding added sugar content when sugar alcohols are used, FDA regulations require the sugar alcohol content shall be declared. *See* 21 CFR 101.9(c)(6)(iv).

5. Since Defendant fails to declare the Products' vegetable glycerin content as required by FDA regulations, the Products are misbranded and the sugar content Representations are false and misleading.

6. Consumers increasingly are becoming aware of the benefits of living a healthy lifestyle, including the well-documented health consequences of excessive added-sugar consumption. As a result, consumers increasingly scrutinize food and supplement labels for sugar content and seek out products that purport to reduce or eliminate added sugars.

7. While many consumers wish to reduce sugar intake, they do not wish to do so by increasing their consumption of unfamiliar substances not clearly identified on the label as sweeteners. Moreover, a product claim like "3g of Sugar" or "1g of Sugar" misleadingly implies that the products are healthier than the traditional versions of the foods because they are sweetened with only "3g of Sugar" or "1g of Sugar."

8. Reasonable consumers of Defendant's Products, like Plaintiffs, are misled and deceived by Defendant's label Representations into believing that the Products are sweetened with only the amount of sugar disclosed on the front label and are free of undisclosed sugar alcohols, such as vegetable glycerin, that function as sweeteners.

9. Plaintiffs and reasonable consumers suffered economic injury based on the purchase price of the Products.

10. If Plaintiffs had known the truth about Defendant's false and misleading Representations, they would not have purchased the Products or would have paid less for them.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

12. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and does supply goods within the State of New York.

13. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Dushaj resides in this District and because Defendant maintains its principal place of business in this District.

## PARTIES

14. Plaintiff Molly Brown is a citizen of California who purchased the Products during the class period, as described herein. Within the class period, Plaintiff Brown purchased the Rip Van Wafels 12 pack for her personal use from Amazon.com delivered to Novato, California. Prior to her purchase of the Products, Plaintiff Brown reviewed the product's labeling and packaging and saw that Rip Van Wafels Dutch Caramel & Vanilla purportedly contained "3g sugar". Plaintiff Brown relied on those representations to choose the Products over comparable products. Plaintiff Brown saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that the Products were sweetened with only the amount of sugar disclosed on the front label and were free of undisclosed sugar alcohols functioning as sweeteners.

Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products on the same terms had she known these representations were not true. However, Plaintiff Brown remains interested in purchasing the Products and would consider the Products in the future if Defendant ensured the Products were sweetened with only the amount of sugar disclosed on the front label and were free of undisclosed sugar alcohols functioning as sweeteners. In making her purchase, Plaintiff Brown paid a substantial price premium due to the false and misleading sugar content Representations. However, Plaintiff Brown did not receive the benefit of her bargain because the Products, in fact, were not sweetened with only the amount of sugar disclosed on the front label and instead contained undisclosed sugar alcohols functioning as sweeteners. Plaintiff Brown further understood that the purchase came with Defendant's representations and warranties that the Products were sweetened with only the amount of sugar disclosed on the front label and were free of undisclosed sugar alcohols such as vegetable glycerin. *See* Ex. 1 (CLRA Declaration of Plaintiff Molly Brown).

15. Plaintiff Jacqueline Dushaj is a citizen of New York who resides in this District and purchased the Products during the class period, as described herein. Within the class period, Plaintiff Dushaj purchased the Products for her personal use from a TJ Maxx Home Goods store located in Middletown, New York. Prior to her purchase of the Products, Plaintiff Dushaj reviewed the product's labeling and packaging and saw that Rip Van Wafels purportedly contained "3g sugar" and that Rip Van Mini Wafels purportedly contained "1g sugar" on the front panel. Plaintiff Dushaj relied on those representations to choose the Products over comparable products. Plaintiff Dushaj saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that the Products were sweetened with only the amount of sugar disclosed on the front label and were free of undisclosed sugar alcohols functioning as sweeteners.

Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products on the same terms had she known these representations were not true. However, Plaintiff Dushaj remains interested in purchasing the Products and would consider the Products in the future if Defendant ensured the Products were sweetened with only the amount of sugar disclosed on the front label and were free of undisclosed sugar alcohols functioning as sweeteners. In making her purchase, Plaintiff Dushaj paid a substantial price premium due to the false and misleading sugar content Representations. However, Plaintiff Dushaj did not receive the benefit of her bargain because the Products, in fact, were not sweetened with only the amount of sugar disclosed on the front label and instead contained undisclosed sugar alcohols functioning as sweeteners. Plaintiff Dushaj further understood that the purchase came with Defendant's representations and warranties that the Products were sweetened with only the amount of sugar disclosed on the front label and were free of undisclosed sugar alcohols such as vegetable glycerin.

16. Defendant Rip Van, Inc. is a Delaware corporation with its principal place of business at 330 W. 38th Street Suite 604, New York, New York 10018 and a mailing address of 228 Park Ave S, New York, New York 10003. Defendant Rip Van, Inc. manufactures, sells, and/or distributes Rip Van Wafels and Rip Van Mini Wafels, and is responsible for the advertising, marketing, trade dress, and packaging of the Products. Defendant manufactured, marketed, and/or sold the Products during the class period. The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products and the sugar content Representations was primarily carried out at Defendant's headquarters and facilities in New York. The policies, practices, acts and omissions giving rise to this action were developed in, and emanated from, Defendant's headquarters in New York, New York.

## FACTUAL BACKGROUND

### A. All Of The Products Make Prominent Front-Label Sugar Content Representations

17. All of the Products at issue make prominent front-label representations about the amount of sugar they contain. Rip Van Wafels prominently state "3g sugar" on the front panel, while Rip Van Mini Wafels prominently state "1g sugar" on the front panel.

18. Rip Van Wafels are sold in multiple flavor varieties. Each variety bears the prominent front-panel representation "3g sugar." For each flavor, although vegetable glycerin is listed as an ingredient on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel, as illustrated below:

19. The label of the Rip Van Wafels Dutch Caramel & Vanilla variety prominently displays "3g sugar." Although vegetable glycerin is the sixth ingredient listed on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel:




20. The label of the Rip Van Wafels Snickerdoodle variety prominently displays "3g sugar." Although vegetable glycerin is the sixth ingredient listed on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel:




21. The label of the Rip Van Wafels Honey & Oats variety prominently displays "3g sugar." Although vegetable glycerin is the sixth ingredient listed on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel:




22. The label of the Rip Van Wafels Chocolate Brownie variety prominently displays "3g sugar." Although vegetable glycerin is the seventh ingredient listed on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel:




23. The label of the Rip Van Wafels Cookies & Cream variety prominently displays "3g sugar." Although vegetable glycerin is the fifth ingredient listed on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel:




24. Rip Van Mini Wafels are sold in multiple flavor varieties, including Dutch Caramel & Vanilla and Snickerdoodle. Each variety bears the prominent front-panel representation "1g sugar." For each flavor, although vegetable glycerin is listed as an ingredient on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel, as illustrated below:

25. The label of the Rip Van Mini Wafels Dutch Caramel & Vanilla variety prominently displays "1g sugar." Although vegetable glycerin is the sixth ingredient listed on the

back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel:




26. The label of the Rip Van Mini Wafels Snickerdoodle variety prominently displays "1g sugar." Although vegetable glycerin is the sixth ingredient listed on the back of the package, vegetable glycerin – and the amount thereof – is not declared in the Nutrition Facts panel:




27. The sugar content Representations lead consumers to reasonably believe that the Products are free of undisclosed sugar alcohols and other alternative sweeteners.

28. The "3g sugar" and "1g sugar" representations are unambiguous on their face. A

reasonable consumer reading the front label of the Products would understand these representations to mean that the Products were sweetened with only amount of sugar disclosed on the front label and are free of undisclosed sugar alcohols, like vegetable glycerin, that function as sweeteners. Reasonable consumers have no reason to inspect and research the ingredient list to verify, qualify, or correct what appears to be a clear, affirmative representation on the front of the package. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list"). The Second Circuit applies the same rule. See *Mantikas v. Kellogg Co*., 910 F.3d 633, 637 (2d Cir. 2018) (consumers are not expected to look past misleading front-of-package representations to glean accurate information from the ingredient list).

29. Even assuming the sugar content Representations were considered ambiguous, the back label of the Products does not cure the deception. Vegetable glycerin appears only generically among the ingredients; its presence as a sweetener and the quantity thereof are not disclosed in the Nutrition Facts panel. That omission is not a merely a drafting oversight – it is a violation of the federal regulations governing precisely this type of claim. *See* 21 C.F.R. § 101.9(c)(6)(iv). A reasonable consumer who turns to the back of the package to verify the sugar content Representations therefore finds no information that would contradict, qualify, or correct the front-label representations.

30. Because Defendant has not made the disclosures required by 21 C.F.R. § 101.9(c)(6)(iv), the sugar content Representations are presumptively false or misleading in any particular under California's Sherman Food, Drug, and Cosmetic Law. *See* Cal. Health & Saf. Code §§ 110660, 110670.

31. In the alternative, and independent of the reasonable-consumer analysis above, Defendant's failure to declare the Products' sugar-alcohol content as required by 21 C.F.R. § 101.9(c)(6)(iv) – a federal labeling requirement adopted into California law by Cal. Health & Saf. Code § 110100 – is a standalone violation of the Sherman Law. That standalone violation renders the Products misbranded, *see* Cal. Health & Saf. Code §§ 110660, 110670, and not Legally Saleable, *see id.* §§ 110385, 111440, 111450, and is itself a predicate "unlawful" act under California Business & Professions Code § 17200.

**B. Defendant Is Not Permitted To Make Its Sugar Content Representations In The Absence Of A Back Label Disclosure**

32. According to the FDA, "sugar alcohol content shall be declared" "when a claim is made on the label or in labeling about … added sugars when sugar alcohols are present in the food:"

> "Sugar alcohol" (VOLUNTARY): A statement of the number of grams of sugar alcohols in a serving may be declared voluntarily on the label, except that when a claim is made on the label or in labeling about sugar alcohol or total sugars, or added sugars when sugar alcohols are present in the food, sugar alcohol content shall be declared. … In lieu of the term "sugar alcohol," the name of the specific sugar alcohol (e.g., "xylitol") present in the food may be used in the nutrition label provided that only one sugar alcohol is present in the food. Sugar alcohol content shall be indented and expressed to the nearest gram, except that if a serving contains less than 1 gram, the statement "Contains less than 1 gram" or "less than 1 gram" may be used as an alternative, and if the serving contains less than 0.5 gram, the content may be expressed as zero.

21 CFR 101.9(c)(6)(iv) (emphasis added).

33. As shown above, despite the use of vegetable glycerin as an ingredient, none of the Products' labels declare the Products' sugar alcohol content as required by 21 CFR 101.9(c)(6)(iv).

34. The disclosure requirement of 21 C.F.R. § 101.9(c)(6)(iv) does not stand alone, but is reinforced by other provisions of 21 C.F.R. § 101.13(i)(3), which prohibits any nutrient content

claim that is "false or misleading in any respect." Defendant's sugar content Representations are nutrient content claims subject to § 101.13. Defendant's failure to disclose the presence and quantity of sugar alcohols in the Products renders the claims misleading within the meaning of the regulation.

35. The statutory authority for these regulations is the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343(r), which renders a food misbranded if its labeling bears a nutrient content claim that does not comply with the FDA's implementing regulations. Defendant's sugar content Representations on the Products are nutrient content claims within the meaning of 21 U.S.C. § 343(r)(1)(A). Because the Representations fail to comply with 21 C.F.R. §§ 101.9(c)(6)(iv) and 101.13(i)(3), the Products are misbranded under federal law. *See also* Cal. Health and Safety Code §§ 110385, 111440, 111450.

36. Identical federal and California laws regulate food labeling and state that a food is misbranded if "its labeling is false or misleading in any particular or (2) in the case of a food to which section 350 of this title applies, its advertising is false or misleading in a material respect or its labeling is in violation of section 350(b)(2) of this title." *See* 21 U.S.C. § 343(a); Cal. Health & Saf. Code § 111330; *see also* Cal. Health & Saf. Code § 110100 (adopting all federal food labeling regulations as state law), §110660 (deeming food misbranded if its labeling is false or misleading in any particular), §110670 (deeming food misbranded if its labeling fails to bear required disclosures).

37. The mere appearance of "vegetable glycerin" in the back-of-package ingredient list does not render the front-label sugar content Representations non-misleading. Settled Second Circuit law holds that an ingredient list cannot be used to correct or cure a misleading front-label claim. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("We conclude that a

reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."). The Ninth Circuit applies the same rule. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Nor would a consumer who saw "vegetable glycerin" in the ingredients list necessarily recognize it as a sweetener; survey evidence demonstrates that a significant percentage of consumers are unfamiliar with sugar alcohols altogether, as alleged above. The federal regulations governing sugar content claims address this very problem by requiring that sugar-alcohol content be declared in the Nutrition Facts panel – not buried in the ingredient list – whenever a sugars claim is made and sugar alcohols are present. *See* 21 C.F.R. § 101.9(c)(6)(iv).

38. Plaintiff Brown brings claims under California state laws – the Unfair Competition Law, False Advertising Law, Consumers Legal Remedies Act, and common-law theories – and Plaintiff Dushaj brings claims under New York General Business Law §§ 349 and 350. Each of these statutes independently prohibits false or misleading commercial representations and provides Plaintiffs with a private right of action. The federal regulations cited herein are referenced because they have been expressly adopted as California state law under Cal. Health & Saf. Code § 110100, and because they establish the labeling standards that Defendant's sugar content Representations fail to meet.

## C. <u>Defendant's Sugar Content Representations Are Material To Consumers</u>

39. While many consumers wish to reduce sugar intake, they do not wish to do so by increasing their consumption of unfamiliar substances not clearly identified on the label as

sweeteners.[2]

40. The quest for sugar reduction has led food and beverage manufacturers to reformulate products by replacing added sugars with a combination of high-intensity sweeteners, novel sweeteners, and sugar alcohols to mimic the taste and functionality of sugar without the consumer's knowledge.

41. The front-label representations "3g sugar" and "1g sugar" on the Products misleadingly imply that the Products are sweetened only with the amount of sugar stated on the front label and therefore healthier than the traditional versions of the foods.

42. According to a 2023 study, 75% of consumers stated that they are seeking to limit or avoid sugar in their diets.[3] Despite this, and notwithstanding FDA regulations to the contrary, the Nutrition Facts panel on the Products fails to provide the required information regarding the presence of sugar alcohols in the Products.

43. Consumers want to know how the foods they purchase are sweetened and support greater transparency in labeling, with 66% of consumers agreeing that it is important for food companies to clearly identify sugar substitutes as sweeteners in the ingredients list.[4]

44. Research has found that a large percentage of consumers do not recognize non-

---

[2] Innova Market Insights: Consumers more interested in reducing sugar than replacing it, yet use of sweeteners surges, November 19, 2019. Retrieved from https://www.foodnavigator-usa.com/Article/2019/11/19/Innova-Market-Insights-Consumers-more-interested-in-reducing-sugar-than-replacing-it-yet-use-of-sweeteners-surges. Three in five consumers would rather cut back on sugar than consume alternative sweeteners.

[3] Sugar Reduction Opportunities in the Food and Beverage Spaces, 2023, https://www.mccormickflavor.com/-/media/project/oneweb/fon21/articles/2023/09/mkcfona_sugarreductiontrendbite_0923_2.pdf

[4] Quadrant Strategies, Sweetener Transparency Study: Full Survey Results (June 2020) (n=1,002 U.S. consumers, conducted for The Sugar Association), *available at* https://www.sugar.org/wp-content/uploads/Sweetener-Visibility-Full-Consumer-Research-Results.pdf.

nutritive sweeteners and sugar alcohols in the products they purchase. For instance, 49% of consumers were unfamiliar with Monk Fruit, while 47% had never heard of Xylitol.[5]

45. Consumers have shown a heightened concern with regard to artificial sweeteners. 44% of consumers report that when shopping for food products the specific ingredient they look to avoid is artificial sweeteners.[6]

46. In the 2018 Global Sweetener Report, consumers in the U.S. were asked to rate different types of sweeteners as good, bad, or neutral. Consumers showed a clearly negative view of artificial sweeteners with only 18% of consumers reporting that they believe artificial sweeteners are safe.[7]

47. "According to research conducted by Innova Market Insights, 91% of consumers are influenced by sugar reduction claims and there is definitely no lack of products with those claims being introduced."[8]

48. Such claims have become increasingly important to consumers. In the U.S., 82% of shoppers report actively looking for at least one front-of-package claim. Low sugar is the top product claim shoppers seek out when purchasing food products, with 34% of consumers reporting

---

[5] Marriner Marketing, Consumer Survey for The Sugar Association (Dec. 2018) (national survey of 1,500 U.S. consumers); findings reproduced in Sugar Ass'n Citizen Petition to FDA, Docket No. FDA-2020-P-1478-0001, at 14 n.12 (June 3, 2020), *available at* https://www.regulations.gov/document/FDA-2020-P-1478-0001.

[6] Label Insight, Shopper Trends Survey (2017), *available at* https://www.packagingstrategies.com/ext/resources/2017-Postings/Packaging-News/Label-Insight-Shopper-Trends-Infographic.pdf.

[7] Health Focus International 2018 Global Sweetener Report, Neutral opinions are likely due to low awareness of the many different sweetener options available and a lack of understanding of specific types of sweeteners. HealthFocus International, 2018 Global Sweetener Report: Navigating the World of Sweeteners (2018), free excerpt *available at* https://www.healthfocus.com/wp-content/uploads/2019/03/2018-HealthFocus-Global-Report-__-Navigating-the-World-of-Sweeteners_FREE-EXCERPT.pdf.

[8] Sugar: The Voice of the Consumer, 2021, https://www.mccormickflavor.com/articles/2021/06/sugar-the-voice-of-the-consumer

that they look for it on packages.[9] When making purchasing decisions, 22% of consumers report that their purchases are influenced by the presence of a low/no sugar claim.[10]

49. Survey data from Pew Research Center found that 44% of consumers limit their consumption of artificial sweeteners, while 38% reported they limit sugar.[11] Among consumers who decreased or stopped consuming low- and no-calorie sweeteners in the year preceding April 2024, more than four in ten reported doing so for health-related reasons, 31% because they had heard such sweeteners were unsafe to consume, and an additional 14% on the recommendation of their doctor.[12]

## CLASS ACTION ALLEGATIONS

50. ***Class Definition***: Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves, on behalf of all others similarly situated, and as members of the Classes defined as follows:

> All citizens of the United States who, within the relevant statute of limitation periods, purchased one or more of Defendant's Products (the "Nationwide Class").

51. All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products (the "California Subclass").

---

[9] FMI US Grocery Shopper Trends, 2019. Retrieved from: https://www.fmi.org/docs/default-source/webinars/trends-a-look-at-today%27s-grocery-shopper-slides-pdf.pdf?sfvrsn=9d01576e_0.

[10] Innova Market Insights: Consumers more interested in reducing sugar than replacing it, yet use of sweeteners surges, November 19, 2019. Retrieved from https://www.foodnavigator-usa.com/Article/2019/11/19/Innova-Market-Insights-Consumers-more-interested-in-reducing-sugar-than-replacing-it-yet-use-of-sweeteners-surges.

[11] Pew Research Center, November 2018, "Public Perspectives on Food Risks," https://www.pewresearch.org/science/2018/11/19/public-perspectives-on-food-risks/

[12] FIC Spotlight Survey: American Perceptions of Sweeteners in Foods & Beverages, 2024, https://ific.org/wp-content/uploads/2025/04/IFIC-Nov-Spotlight-Survey-Sweeteners.pdf (see Q3, p. 12)

52. All citizens of New York who, within six years prior to the filing of the initial Complaint, purchased Defendant's Products (the "New York Subclass").

53. Excluded from the Class and Subclasses are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

54. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

55. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

56. ***Numerosity*:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the United States, as well as in the State of California and the State of New York. Accordingly, it would be impracticable to join all members of the Class before the Court.

57. ***Commonality and Predominance*:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether the sugar content Representations are false, misleading and/or deceptive to a reasonable consumer;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices

by advertising, labeling and selling the Products;

- Whether Defendant violated New York's General Business Law ("GBL") §§ 349-350;
- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and/or the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;
- Whether Defendant committed a breach of express warranty;
- Whether Plaintiffs and the Class have sustained damage as a result of Defendant's unlawful conduct;
- The proper measure of damages sustained by Plaintiffs and the Class; and
- Whether Defendant was unjustly enriched by its unlawful practices.

58. ***Typicality***: Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because Plaintiffs, like the Class members, purchased Defendant's misbranded Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

59. ***Adequacy***: Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Plaintiffs have no interests that are antagonistic to those of the Class. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

60. ***Superiority***: A class action is superior to all other available methods for the fair

and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

61. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Class and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION

### COUNT I
### Violation of New York GBL § 349
### (On behalf of Plaintiff Dushaj and the New York Subclass)

62. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

63. Plaintiff Dushaj brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

64. This claim is brought pursuant to the laws of the State of New York.

65. Plaintiff Dushaj and New York Subclass members are "persons" within the meaning of GBL § 349(h).

66. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

67. New York GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

68. Defendant made false and misleading statements by representing on the front labels of Rip Van Wafels that the products contain "3g sugar," and on the front labels of Rip Van Mini

Wafels that the products contain "1g sugar," when in fact the Products contain the sugar alcohol vegetable glycerin, the quantity of which is not declared in the Nutrition Facts panel as required by 21 C.F.R. § 101.9(c)(6)(iv).

69. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

70. Plaintiff Dushaj understood Defendant's sugar content Representations to mean that the Products were sweetened with only the disclosed amount of sugar and are free of undisclosed sugar alcohols functioning as sweeteners, as reasonable consumers would understand them.

71. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products are sweetened with only the amount of sugar disclosed on the Products' front labels and are free of undisclosed sugar alcohols functioning as sweeteners.

72. Defendant's deceptive acts and practices were directed at consumers.

73. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts and practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it misrepresents how the products are sweetened.

74. Plaintiff Dushaj and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account

of the sugar content Representations, as described herein. As a result, Plaintiff Dushaj and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (Rip Van Wafels with only "3g sugar" and Rip Van Mini Wafels with only "1g sugar," each free of undisclosed sugar alcohols functioning as sweeteners) and the Products as actually sold (Products containing the undisclosed sugar alcohol vegetable glycerin that functions as a sweetener).

75. On behalf of herself and other members of the New York Subclass, Plaintiff Dushaj seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
## New York GBL § 350
## (On behalf of Plaintiff Dushaj and the New York Subclass)

76. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

77. Plaintiff Dushaj brings this claim individually and on behalf of the New York Subclass against Defendant.

78. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

79. New York GBL § 350-a(1) defines false advertising as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such

representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

80. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised Rip Van Wafels as containing "3g sugar" and Rip Van Mini Wafels as containing "1g sugar" when in fact the Products contain the sugar alcohol vegetable glycerin, the quantity of which is not declared in the Nutrition Facts panel as required by 21 C.F.R. § 101.9(c)(6)(iv).

81. Plaintiff Dushaj understood Defendant's sugar content Representations to mean that the Products are sweetened with only the disclosed amount of sugar and are free of undisclosed sugar alcohols functioning as sweeteners, as reasonable consumers would understand them.

82. Defendant's sugar content Representations are consumer-oriented and were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

83. Defendant's sugar content Representations have resulted in consumer injury or harm to the public interest.

84. As a result of the sugar content Representations, Plaintiff Dushaj and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the sugar content Representations, as described herein. As a result, Plaintiff Dushaj and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

85. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff Dushaj and New York Subclass members seek to enjoin the unlawful acts and practices described herein,

to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Violations of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
**(On behalf of Plaintiff Brown and the California Subclass)**

86. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

87. Plaintiff Brown brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

88. Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

89. Plaintiff Brown brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

90. Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

***Defendant's Conduct Constitutes a Fraudulent Business Practice***

91. Defendant's conduct constitutes a fraudulent business practice because, as set forth herein, consumers are likely to be deceived by Defendant's Representation.

92. Defendant was and is aware that its Representation is material to consumers.

93. Defendant was and is aware that its Representation is misleading, as described

herein.

94. Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

95. There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

***Defendant's Conduct Constitutes an Unfair Business Practice***

96. Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

97. Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representation to increase sales of the Products.

98. Defendant was and is aware that its Representation is misleading, as described herein.

99. Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representation.

100. Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Representation is outweighed by the harm to consumers.

101. As set forth herein, the Representation is an optional, voluntary advertising statement.

102. Defendant makes the Representation to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

103. Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth.

104. Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

105. In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

106. Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

107. There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

108. Plaintiff and members of the California Subclass could not have reasonably avoided injury. Defendant's uniform Representation regarding the Products was likely to deceive, and Defendant knew or should have known that its Representation was misleading.

109. Plaintiff Brown purchased the Products in reasonable reliance on Defendant's sugar content Representations and understood those Representations to mean that the Products were sweetened with only the disclosed amount of sugar and are free of undisclosed sugar alcohols functioning as sweeteners, as reasonable consumers would understand.

***Defendant's Conduct Constitutes an Unlawful Business Act***

110. Defendant's misrepresentation of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[13]

---

[13] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his

111. Defendant's conduct in making the Representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

112. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

113. In addition, Defendant's Representation constitutes an "unlawful" practice because the Product labels are "false or misleading in any particular" and the Products are therefore misbranded under the law. *See* 21 U.S.C. § 352; Cal. Health and Safety Code § 111330.

114. Because the Products are misbranded, they are not Legally Saleable. *See* Cal. Health and Safety Code §§ 110385, 111440, 111450.

115. Plaintiff and members of the California Subclass could not have reasonably avoided injury. Defendant's uniform, material misrepresentation regarding the Products was likely to deceive, and Defendant knew or should have known that its misrepresentation was untrue and misleading.

116. Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and members of the California Subclass.

---

injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

117. As a result of the business acts and practices described above, Plaintiff and members of the California Subclass are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

118. Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and members of the California Subclass are entitled to interest in an amount according to proof.

119. With respect to restitution under the UCL claim, Plaintiff alleges in the alternative that Plaintiff and members of the California Subclass lack an adequate remedy at law for the reasons already alleged above.

**COUNT IV**
**Violation of California's False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**
**(On behalf of Plaintiff Brown and the California Subclass)**

120. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

121. Plaintiff Brown brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

122. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

123. Defendant violated § 17500 when it represented, through its false and misleading Representation, that the Products possess characteristics and value that they do not have.

124. Defendant's deceptive practices were designed to induce reasonable consumers like

Plaintiff to purchase the Products.

125. Defendant's uniform, material Representation regarding the Products was likely to deceive, and Defendant knew or should have known that its uniform misrepresentation was untrue and/or misleading.

126. Plaintiffs purchased the Products in reliance on the Representations made by Defendant, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations.

127. Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and members of the California Subclass.

128. The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

129. In making the Representation alleged herein, Defendant knew or should have known that the Representation was deceptive and/or misleading, and acted in violation of § 17500.

130. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the California Subclass request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

131. With respect to restitution under the FAL claim, Plaintiff alleges in the alternative that Plaintiff and members of the California Subclass lack an adequate remedy at law for the reasons already alleged above.

**COUNT V**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq*.)**
**(On behalf of Plaintiff Brown and the California Subclass)**

132. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

133. Plaintiff Brown brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

134. Plaintiff Brown brings this action pursuant to California's CLRA, Cal. Civ. Code § 1750, *et seq*.

135. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

136. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

137. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

138. Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

139. Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

140. Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the Representation, as described herein.

141. Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the Representation, as described herein.

142. In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

143. Defendant's uniform Representation regarding the Products was likely to deceive, and Defendant knew or should have known that its Representation was deceptive and/or misleading.

144. Plaintiff and members of the California Subclass relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

145. Plaintiffs and members of the California Subclass were unaware of the existence of facts that Defendant suppressed and failed to disclose, including that the Products contain the sugar alcohol vegetable glycerin and that the sugar content Representations are false, misleading, and noncompliant with applicable labeling requirements.

146. Plaintiff and members of the California Subclass would not have purchased the Products had they known the truth about the Products.

147. Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct.

148. Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at which they were offered.

149. Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to

increase the sale of the Products.

150. Pursuant to California Civil Code § 1782(a), on February 11, 2026, Plaintiffs, on behalf themselves and members of the Classes, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiffs' claims.

151. As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the California Subclass request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

152. Plaintiff seeks all relief available under this cause of action. Despite giving Defendant more than 30-days from the date of the notification letter and draft complaint to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief. As such, Plaintiff also seeks compensatory, monetary and punitive damages, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief

153. With respect to restitution under the CLRA claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## COUNT VI
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the Classes)**

154. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

155. By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling — specifically, that the Products contain "3g sugar" or "1g sugar," as described herein.

156. This labeling and advertising constitutes an express warranty and became part of the basis of the bargain between Plaintiffs and members of the Classes, on the one hand, and Defendant, on the other.

157. Defendant, through its advertising and labeling, created an express warranty that the Products comport with the front-of-package sugar content Representations, specifically that the Products are sweetened only with the sugar declared on their front labels.

158. The express warranty appears on all labels of the Products and specifically relates to the goods being sold.

159. Despite Defendant's express warranty about the nature of the Products, the Products do not comport with the Representations. The Products contain vegetable glycerin – a sugar alcohol functioning as a sweetener whose presence and quantity are not disclosed on the Nutrition Facts panel – and therefore are not what Defendant represented them to be.

160. Accordingly, Defendant breached the express warranty about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

161. Plaintiffs provided Defendant with pre-suit notice of the breach of warranty, including by notice letter dated February 11, 2026.

162. Plaintiffs and members of the Classes purchased the Products in reliance on Defendant's express warranty.

163. As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and members of the Classes were harmed based on the loss of the benefit of their bargain between what was represented (Products bearing truthful and lawful sugar content Representations free from undisclosed sugar alcohols functioning as sweeteners) and what was actually delivered. Plaintiffs and Class members would not have purchased the Products, or would have paid less for

them, had they known the truth.

**COUNT VII**
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Classes)**

164. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

165. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

166. To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Federal Rule of Civil Procedure 8.

167. Plaintiffs and Class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class members paid for the Products.

168. Defendant knew of the benefit conferred on it by Plaintiffs and the Class members.

169. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Products, retention of which is unjust and inequitable because Defendant marketed and sold the Products under sugar content Representations that were false, misleading, and unlawful, as alleged herein, and reasonable consumers were unaware of the true facts.

170. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

171. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

172. Plaintiffs and Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

173. As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have suffered injury in an amount to be proven at trial.

174. Plaintiffs and putative Class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits Defendant obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

A. For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Class and Subclasses; and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses;

B. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C. For an order awarding, as appropriate, compensatory, statutory, and monetary damages to Plaintiffs and the Class and Subclasses;

D. For an order awarding injunctive relief;

E. For an order awarding attorneys' fees and costs;

F. For an order awarding pre-and post-judgment interest; and

G. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 17, 2026

Respectfully submitted,

**KAMBERLAW, LLC**

By: *___/s/ Frederick J. Klorczyk III__*
Frederick J. Klorczyk III

Frederick J. Klorczyk III
Edward M. Kamber
305 Broadway, Suite 713
New York, NY 10007
Tel: 646.964.9604
Fax: 212.202.6364
Email: fklorczyk@kamberlaw.com
ekamber@kamberlaw.com

*Attorneys for Plaintiffs and the Proposed Class*